**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION**

United States District Court
Southern District of Texas
FILED

SEP 1 7 2003

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| GENERAL SECURITY INDEMNITY COMPANY OF ARIZONA | § § § | |
| VS. | § § | C.A. NO. **B-03-167** |
| LAS ARENAS CONDOMINIUMS ASSOCIATION OF CO-OWNERS, INC. D/B/A LAS ARENAS CONDOMINIUMS | § § § § | |

## COMPLAINT FOR DECLARATORY JUDGMENT

**TO THE HONORABLE JUDGE OF SAID COURT:**

COMES NOW, **GENERAL SECURITY INDEMNITY COMPANY OF ARIZONA**, Plaintiff, and pursuant to 28 U.S.C. § 2201, the Declaratory Judgment Act, seeks relief against **LAS ARENAS CONDOMINIUMS ASSOCIATION OF CO-OWNERS, INC. D/B/A LAS ARENAS CONDOMINIUMS**, Defendant and respectfully shows:

## PARTIES AND SERVICE

1.      Plaintiff, General Security Indemnity Company of Arizona ("General Security"), is a corporation organized under the laws of and with its headquarters located in the State of Arizona. General Security is the successor in interest to Fulcrum Insurance Company ("Fulcrum"), a corporation organized under the laws of the State of New York and with its former headquarters in the State of New York. Fulcrum issued the insurance policy which is the subject of this litigation. At all material times, Fulcrum was an authorized insurer doing business in the State of Texas.

2.      Defendants, Las Arenas Condominiums Association of Co-Owners, Inc. d/b/a Las Arenas Condominiums ("Las Arenas"), is a domestic corporation incorporated under the laws of the

S:\KEK\2326\2325\Declaratory Judgment Action.wpd         1

State of Texas. Defendant may be served by serving its registered agent, Patricio Sada, 700 East

Expressway 83, San Juan, Texas 78589.

## JURISDICTION

3.      There is complete diversity of citizenship between the Plaintiff and the Defendant,

and the amount in controversy exceeds $75,000, exclusive of interest and costs. This Court therefore

has jurisdiction pursuant to 28 U.S.C. § 1332.

## VENUE

4.      Venue is proper in this district and in this division because the property subject to the

claim is located in Padre Island, Texas.

## FACTUAL BACKGROUND

*The Policy*

5.      Fulcrum Insurance Company ("Fulcrum") issued its Commercial Building and

Personal Property Policy No. 246501-01 to the named insureds Las Arenas Condominiums and Las

Arenas Condominiums Association of Co-Owners, Inc. The Policy provided specified coverage for

the period June 29, 2001 to June 29, 2002. The property insured was described as a building located

at 3104 Gulf Blvd., South Padre Island, Texas 78597.

6.      Policy No. 246501-01 provides coverage certain to various limitations and exclusions

which is set forth below:

*Policy Provisions*

7.      The general insuring provisions of the Policy are contained in the Condominium

Association Coverage Form CP 00 17 10 91. Generally, Fulcrum agrees to "pay for direct physical

loss of or damage to Covered Property at the premises described in the Declarations caused by or

resulting from any Covered Cause of Loss." "Covered Property...means the following types of property for which a Limit of Insurance is shown in the Declarations:

      a.    **Building,** meaning building or structure described in the Declarations, ...

8.    Paragraph D. is entitled "DEDUCTIBLE." It provides in pertinent part as follows:

> We will not pay for loss or damage in any one occurrence until the amount of loss or damages exceeds the Deductible shown in the Declarations. We will then pay the amount of loss or damage in excess of the Deductible, up to the applicable Limit of Insurance, after any deduction required by the Coinsurance condition or the Agreed Value Optional Coverage.

9.    Paragraph E. is entitled "LOSS CONDITIONS." It provides in pertinent part as follows:

      3.    **Duties in the Event of Loss or Damage**

          a.    You must see that the following are done in the event of loss or damage to Covered Property:

            . . .

          (2)    Give us prompt notice of the loss or damage. Include a description of the property involved.

          (3)    As soon as possible, give us a description of how, when and where the loss or damage occurred.

          (4)    Take all reasonable steps to protect the Covered Property from further damage by a Covered Cause of Loss. If feasible, set the damaged property aside and in the best possible order for examination. Also keep

a record of your expenses for emergency and temporary repairs, for consideration in the settlement of the claim.   This will not increase the Limit of Insurance.

(5)       At our request, give us complete inventories of the damaged and undamaged property.   Include quantities, costs, values and amount of loss claimed.

(6)       As often as may be reasonable required, permit us to inspect the property proving the loss or damage and examine your books and records.

Also permit us to take samples of damaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

(7)       Send us a signed, sworn proof of loss containing the information we request to investigate the claim.   You must do this within 60 days after our request.   We will supply you with the necessary forms.

(8)       Cooperate with us in the investigation or settlement of the claim.

(b)   We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonable required, about any matter relating to this insurance or the claim, including an insured's books and records.  In the event of an examination, an insured's answers must be signed.

4.    **Loss Payment**

    a.    In the event of loss or damage covered by this Coverage Form, at our option, we will either:

        (1)    Pay the value of lost or damaged property;

        (2)    Pay the cost of repairing or replacing the lost or damaged property;

. . .

        (4)    Repair, rebuild or replace the property with other property of like kind and quality.

    b.    We will give notice of our intentions within 30 days after we receive the sworn proof of loss.

. . .

10.    Endorsement No. CP 03 20 10 90 is entitled "MULTIPLE DEDUCTIBLE FORM." It shows that the deductible for "Wind Driven Rain" is "$2,500 per occurrence unit/$10,000 per occurrence common" and $5,000 per occurrence for "All other Perils."

11.    Endorsement No. FIC 1005 1198, entitled "CONDOMINIUM ENDORSEMENT," provides in pertinent part as follows:

    I.    UNIT OWNER BUILDING COVERAGE:

Buildings, when insured under this policy, shall also include portions of the building owned by the Unit-Owner. Property included, but not limited to, are: fixtures, partition walls, carpets, drapes, built-in appliances, wall covering, air-conditioning and heating equipment, utilities and built-in furniture, but excluding all property not constituting a permanent part of the building. These replacements thereof,

S:\KEK\2326\2325\Declaratory Judgment Action.wpd                    5

would be in accordance with the original condominium plans and specifications.

. . .

III.    LOSS ADJUSTMENT CLAUSE:

    A.    Subject in all other respects to the provisions of the Mortgage Clause of this policy; loss, if any, shall be adjusted with the Insured, but shall be payable to the insurance trustee designated by the appropriate governing body of the Association.

    B.    Such payment to the insurance trustee shall constitute a complete discharge of this Company's liability under this policy for such loss.

12.    Causes of Loss, Special Form, CP 1030, provides in pertinent part as follows:

A.    Covered Cause of Loss

"[C]overed Causes of Loss means RISKS OF DIRECT PHYSICAL LOSS unless the loss is:

    1.    Excluded in Section **B.**, Exclusions; or

    2.    Limited in Section **C.**, Limitations;

that follow."

**B.    EXCLUSIONS**

    1.    We will not pay for loss or damage caused directly or indirectly by any of the following.  Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

. . .

    g.    Water

       (3)    Water that backs up or overflows from a sewer, drain or sump; or

2.    We will not pay for loss or damage caused by or resulting from any of the following:

      . . .

  b.    Delay, loss of use, or loss of market.

      . . .

(4)    (1)    Wear and tear;

      (2)    Rust, corrosion, fungus, decay deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself;

      . . .

      (4)    Settling, cracking, shrinking or expansion;

      . . .

      (6)    Mechanical breakdown, including rupture or bursting caused by centrifugal force.

      . . .

      (7)    The following causes of loss to personal property:

        (a) Dampness or dryness of atmosphere;

        (b) Changes in or extremes of temperature....

But if an excluded cause of loss that is listed in **2.d. (1)** through **(7)** results in a "specified cause of loss"...,

we will pay for the loss or damage caused by that "specified cause of loss"....

. . .

f.     Continuous or repeated seepage or leakage of water that occurs over a period of 14 days or more.

. . .

3.     We will not pay for loss or damage caused or resulting from any of the following. **3.a.** through **3.c.** But if an excluded cause of loss that is listed in **3.a.** through **3.c.** results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

a.     Weather conditions. But this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in Paragraph 1. above to produce the loss or damage.

b.     Acts or decisions, including the failure to act or decide, ...of any person (or) group....

c.     Faulty, inadequate or defective:

. . .

(2)     Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction

(4)     Maintenance;

of part or all of any property on or off the described premises.

## C.    LIMITATIONS

The following limitations apply to all policy forms...

We will not pay for loss of or damage to property, as described and limited in this section.

c.   The interior of any building or structure, or to personal property in the building or structure, caused by or resulting from rain...whether driven by wind or not, unless:

(1)   The building or structure first sustains damage by a Covered Cause of Loss to its roof or walls through which the rain...enters....

5.   We will not pay the cost to repair any defect to a system or appliance from which water...escapes.

. . .

13.   Endorsement FIC 1203 0599 adds a pollution exclusion, and modifies the definition

of "Actual Cash Value." That term is modified as follows:

The following is added to any provision which uses the term actual cash value:

Actual cash value is calculated as the amount it would cost to repair or replace Covered Property, at the time of loss or damage, with material of like kind and quality, subject to a deduction for deterioration, depreciation and obsolescence. Actual cash value applies to valuation of Covered Property regardless of whether that property has sustained partial or total loss or damage. The actual cash value of lost or damaged property may be significantly less than its replacement cost.

**POLLUTION EXCLUSION**

This policy does not apply to direct physical loss of or damage to Covered Property caused directly or indirectly by the release or discharge or dispersal of toxic or hazardous substances, contaminants or pollutants. Nor will we cover the cost of removal, disposal, decontamination or replacement of insured property that has been contaminated by toxic or hazardous substances, contaminants or pollutants and by law or civil authority must be restored, disposed or decontaminated. Such loss is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

## THE UNDERLYING DISPUTE

14.    On June 28, 2002, one day before the Policy expired, Las Arenas Condominiums issued a Property Notice Loss asserting that there had been an unspecified plumbing leak on June 27, 2002. They contended that unspecified plumbing leak had "exacerbated mold growth in the complex and many individual units of the condominium." Following its notification, Fulcrum has attempted to investigate the claim and obtain factual information underlying the alleged event for purposes of evaluating whether there are any covered causes of loss and items of damage that resulted from the alleged event. However, that investigation to date has not revealed any "plumbing leak" that occurred on June 27, 2002. Rather, the investigation has shown that there was multiple rainwater intrusions as a result of defective construction. The reported instances of plumbing leaks all occurred prior to June 27, 2002 and none were reported when they were discovered. Further, the records indicate that repairs of the alleged damage were made by the plumber under warranty work and any damages resulting from the leaks were corrected.

## CAUSES OF ACTION FOR DECLARATORY JUDGMENT

*Justiciable Controversy*

15.    The Las Arenas Defendants gave notice of a Loss of Claim for coverage under the Policy but have failed to provide adequate information in order to evaluate whether there might be potential coverage based upon the other cause or type of damages sustained. Despite requests for specific information, the information provided does not support the claim submitted and in fact supports that the causes of loss are either excluded, or were corrected by other sources after no notice of the event(s) was provided to Fulcrum.

S:\KEK\2326\2325\Declaratory Judgment Action.wpd                    10

16.    Fulcrum advised the Las Arenas Defendants of its position in its initial reservation attached hereto as Exhibit "A". Although requested by Fulcrum to do so, the Las Arenas Defendants have refused to withdraw their demand for coverage and have still failed to provide adequate information relevant to address the coverage issues raised.

17.    The allegations of Paragraphs 1 through 16 are incorporated herein by reference and reurged as if fully set forth *verbatim*.

18.    There is no coverage under the Fulcrum Policy based upon the information presented by the insured for the following reasons:

    a.    The Policy requires that the Las Arenas Defendants provide immediate notice of any accident or occurrence "whether or not such accidents or occurrences appear likely to involve this Policy."

    Given that all plumbing leaks subsequently identified by the insured occurred prior to June 27, 2002, the insured failed to give immediate notice. Further, Fulcrum has been prejudiced by the delay if necessary and adequate repairs were not made following the insured's notice of the alleged plumbing leaks. Specifically, if the repairs had been made in a proper and adequate fashion, there should be no "subsequent mold" resulting from those events. By failing to provide notice as soon as the insured was aware of such alleged losses, Fulcrum Insurance Company was prejudiced in the ability to verify that the repairs were done properly in the event the amount of damages would have exceeded the insured's deductible.

    b.    If any of the alleged water leaks were subject to coverage under the Policy, the insured was required following notice to "take all reasonable steps to protect the covered property from further damage by a covered cause of loss."

    In the event there were any subsequent damages because the alleged water leak events were not properly repaired following the insured's failure to give notice to Fulcrum, they are in violation of the Policy by failing to take reasonable

steps to prevent further damage and accordingly materially breached the contract such that no coverage is owed for any alleged resulting damage.

c.  The insured has provided information about rainwater entry into the building that came through the walls as a result of defective construction and/or installation of the roof, walls, windows and doors. There was no reported damage to any of these structures but rather an existing condition as of the date the building was complete. Accordingly, there is no coverage under the Policy for any damage caused to the interior of the building by rain because there was no exterior damage first caused by a covered cause of loss that allowed the rain to enter. Covered causes of loss specifically excluded "false, inadequate or defective design, specifications, workmanship, repair, construction...and maintenance."

d.  The Policy excludes any damage "caused by the continuous repeated seepage or leakage of water that occurs over a period of fourteen (14) days or more. Some of the reported water events were reported to have occurred over a fourteen (14) day period and therefore any damages resulting from those events are excluded from coverage under the Policy.

e.  The Policy excludes "water that backs up or overflows from a sewer, drain or sump." Some of the reported events included back up from showers and other drains which were clogged with construction debris. Accordingly, there is no coverage under the Policy for any damages resulting from such water events.

f.  Regardless of the cause of the water entry, the Policy excludes as a covered type of loss "damage caused by or resulting from...rust, corrosion, fungus, decay, deterioration, hidden or latent defect or any quality in a property that causes it to damage or destroy itself....And in the case of personal property, "dampness or dryness of the atmosphere."

g.  Further, the Policy excludes the "cost to repair any defect to a system or appliance from which water...escapes." Accordingly, any costs to repair alleged leaking pipes or systems would not be subject to coverage under the Policy.

h.    The Las Arenas Defendants have failed to provide Fulcrum with information regarding the alleged loss which Fulcrum has reasonably required under the Policy and accordingly has breached its duty to cooperate.

i.    There is no coverage under the Policy for any claim that does not exceed the Policy deductible for any covered causes of loss with covered types of damages. The deductible for damages that result from a covered cause of loss due to wind driven rain is $2,500 per occurrence per unit and $5,000 per occurrence for "all other perils." The insured has provided no evidence that any claim they have submitted under the Policy exceed the deductible.

## CONCLUSION AND PRAYER FOR RELIEF

19.    General Security respectfully prays that a declaratory judgment be issued in its favor declaring that there is no coverage for any losses in connection with the Las Arenas Condominiums during the Policy period.

20.    General Security respectfully prays further that it recover its reasonable costs and attorneys' fees in connection with the entry of a declaratory judgment.

21.    General Security seeks such other and further relief, at law and equity, to which it may show itself justly entitled.

Respectfully submitted,

By _____
KEN E. KENDRICK
State Bar No. 11278500

**ATTORNEYS IN CHARGE FOR
PLAINTIFF SECURITY INDEMNITY
COMPANY OF ARIZONA**

**OF COUNSEL:**
**KELLY, SUTTER & KENDRICK, P.C.**
3050 Post Oak Blvd., Suite 200
Houston, Texas 77056-6570
(713) 595-6000
(713) 595-6001 - Fax

# EXHIBIT "A"

FILE COPY

# KELLY, SUTTER & KENDRICK
## ATTORNEYS AT LAW

3050 POST OAK BLVD., SUITE 200          TELEPHONE (713) 595-6000
HOUSTON, TEXAS 77056-6570         FACSIMILE (713) 595-6001

August 16, 2002

2325                                      ***CMRRR***

Las Arenas Condominium
c/o Mr. Mark Sossi
Attorney at Law
3700 N. 10th Street, Suite 100
McAllen, Texas 78501

Las Arenas Condominium Association of Co-Owners, Inc.
c/o Mr. Mark Sossi
Attorney at Law
3700 N. 10th Street, Suite 100
McAllen, Texas 78501

      Re:    Property Loss Notice Dated June 28, 2002

Gentlemen:

      Our firm represents Fulcrum Insurance Company ("Fulcrum") who issued Policy No. 246501-01 (the "Policy") to the named insured Las Arenas Condominium and Los Arenas Condominium Association of Co-Owners, Inc. (the "Association") for the policy period June 29, 2001 to June 29, 2002 (the "Policy"). We previously acknowledged receipt of the Property Loss Notice which you issued on June 18, 2002. At this time, no sworn statement of proof of loss has been submitted. An investigation has been initiated, but Fulcrum seeks clarification as to the type of claim (plumbing v. rain water) being submitted. Further, Fulcrum needs additional information concerning the time(s), the specific location(s), number of occurrences, and nature of the loss itself and other matters that may be relevant to potential coverage under the Policy. Based upon the information obtained to date, Fulcrum hereby notifies the Association that there may be no coverage for any damages associated with the loss and/or coverage for only a portion of the damages associated with the loss. Further, the Policy deductible(s) will further limit any obligation which Fulcrum has under the Policy. The following will set forth our review of coverage based upon the Property Notice of Loss and the information provided to date.

      As set forth in more detail in the following discussions, Fulcrum Insurance Company reserves all of its rights regarding any payment of alleged damages to the Association as a result of the incident set forth in the Property Notice of Loss dated June 28, 2002. We, and/or other adjusters will

August 16, 2002
Page 2

continue to request information pertaining to the loss and clarification of the claim being made. This letter is a supplement and in addition to the non-waiver agreement previously issued to the Association on behalf of Fulcrum on July 25, 2002. Information obtained following this report may effect the opinions expressed in this letter and Fulcrum's position.

## I    NOTICE OF LOSS

Las Arenas Condominium issued a Property Loss Notice on June 28, 2002 for a date of loss of June 27, 2002. The form appears to show two (2) insureds, Las Arenas Condominium and Mark Strossi, individual. The loss was reported as a plumbing leak which "exacerbated mold growth of in the complex and many individual units of the condominium." The date of the loss was shown as June 27, 2002 and no time of loss was listed. A box was marked showing that the loss had been previously reported but it fails to provide any information about any prior report.

## II    POLICY OF INSURANCE

Fulcrum Insurance Company ("Fulcrum") issued its Commercial Building and Personal Property Policy No. 246501-01 for the named insured Las Arenas Condominium and Las Arenas Condominium Association of Co-Owners, Inc. for the policy period June 29, 2001 to June 29, 2002 (the "Policy"). The Declarations require **"NOTICE OF ALL ACCIDENTS OR OCCURRENCES MUST IMMEDIATELY BE GIVEN TO FULCRUM...."**

The Policy Declarations describe the premises as 3104 Gulf Boulevard, South Padre Island, Texas 78597 and listed different limits of insurance for various structures. The deductible varied pursuant to Form CP 03 20.

Endorsement FIC 1203 0599 adds a pollution exclusion, and modifies the definition of "Actual Cash Value." That term is modified as follows:

> The following is added to any provision which uses the term actual cash value:
>
> Actual cash value is calculated as the amount it would cost to repair or replace Covered Property, at the time of loss or damage, with material of like kind and quality, subject to a deduction for deterioration, depreciation and obsolescence. Actual cash value applies to valuation of Covered Property regardless of whether that property has sustained partial or total loss or damage. The actual cash value or lost or damaged property may be significantly less than its replacement cost.

August 16, 2002
Page 3

### POLLUTION EXCLUSION

This policy does not apply to direct physical loss of or damage to
Covered Property caused directly or indirectly by the release or
discharge or dispersal of toxic or hazardous substances, contaminants
or pollutants.  Nor will we cover the cost of removal, disposal,
decontamination or replacement of insured property that has been
contaminated by toxic or hazardous substances, contaminants or
pollutants and by law or civil authority must be restored, disposed or
decontaminated.  Such loss is excluded regardless of any other cause
or event that contributes concurrently or in any sequence to the loss.

The general insuring provisions of the Policy are contained in the Condominium Association
Coverage Form CP 00 17 10 91.  Generally, Fulcrum agrees to "pay for direct physical loss of or
damage to Covered Property at the premises described in the Declarations caused by or resulting
from any Covered Cause of Loss."  "Covered Property...means the following types of property for
which a Limit of Insurance is shown in the Declarations:

    a.    **Building**, meaning building or structure described in the
              Declarations, including:

                    . . .

Subparagraph A.4. provides "Additional Coverages."  It provides in pertinent as follows:

    a.    **Debris Removal**

        (1)    We will pay your expenses to remove debris of
                  Covered Property caused by or resulting from a
                  Covered Cause of Loss that occurs during the policy
                  period.  The expenses will be paid only if they are
                  reported to us in writing within 180 days of the date of
                  direct physical loss or damage.

        (2)    The most we will pay under this Additional Coverage
                  is 25% of:

                (a)    The amount we pay for the direct physical loss
                        of or damage to Covered Property; plus

August 16, 2002
Page 4

> (b)    The deductible in this policy applicable to that loss or damage.
>
> But this limitation does not apply to any additional debris removal limit provided in the Limits of Insurance section.
>
> . . .

Under the heading "B. EXCLUSIONS," the Policy refers back to the "Causes of Loss Form" shown in the Declarations.

Paragraph D. is entitled "DEDUCTIBLE." It provides in pertinent part as follows:

> We will not pay for loss or damage in any one occurrence until the amount of loss or damages exceeds the Deductible shown in the Declarations. We will then pay the amount of loss or damage in excess of the Deductible, up to the applicable Limit of Insurance, after any deduction required by the Coinsurance condition or the Agreed Value Optional Coverage.

Paragraph E. is entitled "LOSS CONDITIONS." It provides in pertinent part as follows:

> The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions.
>
> 2.    Appraisal
>
> If we and you disagree to the value of the property or the amount of loss, either may make written demand for a [sic] appraisal of the loss....
>
> 3.    Duties in the Event of Loss or Damage
>
> a.    You must see that the following are done in the event of loss or damage to Covered Property:
>
> . . .
>
> (2)    Give us prompt notice of the loss or damage. Include a description of the property involved.

August 16, 2002
Page 5

(3)    As soon as possible, give us a description of how, when and where the loss or damage occurred.

(4)    Take all reasonable steps to protect the Covered Property from further damage by a Covered Cause of Loss. If feasible, set the damaged property aside and in the best possible order for examination. Also keep a record of your expenses for emergency and temporary repairs, for consideration in the settlement of the claim. This will not increase the Limit of Insurance.

(5)    At our request, give us complete inventories of the damaged and undamaged property. Include quantities, costs, values and amount of loss claimed.

(6)    As often as may be reasonable required, permit us to inspect the property proving the loss or damage and examine your books and records.

Also permit us to take samples of damaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

(7)    Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

(8)    Cooperate with us in the investigation or settlement of the claim.

August 16, 2002
Page 6

(b)    We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonable required, about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.

4.    **Loss Payment**

a.    In the event of loss or damage covered by this Coverage Form, at our option, we will either:

(1)    Pay the value of lost or damaged property;

(2)    Pay the cost of repairing or replacing the lost or damaged property;

. . .

(4)    Repair, rebuild or replace the property with other property of like kind and quality.

b.    We will give notice of our intentions within 30 days after we receive the sworn proof of loss.

. . .

d.    We may adjust losses with the owners of lost or damaged property if other than you.  If we pay the owners, such payments will satisfy your claims against us for the owners' property....

f.    We will pay for covered loss or damage to Covered Property within 30 days after we receive the sworn proof of loss, if:

(1)    You have complied with all of the terms of this Coverage Part; and

August 16, 2002
Page 8

Endorsement No. CP 03 20 10 90 is entitled "MULTIPLE DEDUCTIBLE FORM." It shows that the deductible for "Wind Driven Rain" is "$2,500 per occurrence unit/$10,000 per occurrence common" and $5,000 per occurrence for "All other Perils."

Endorsement No. FIC 1005 1198, entitled "CONDOMINIUM ENDORSEMENT," is attached to the Policy but is not on the form Endorsement list pursuant to FIC 1008 0599. It provides in pertinent part as follows:

      I.        UNIT OWNER BUILDING COVERAGE:

> Buildings, when insured under this policy, shall also include portions of the building owned by the Unit-Owner. Property included, but not limited to, are: fixtures, partition walls, carpets, drapes, built-in appliances, wall covering, air-conditioning and heating equipment, utilities and built-in furniture, but excluding all property not constituting a permanent part of the building. These replacements thereof, would be in accordance with the original condominium plans and specifications.

                    . . .

      III.     LOSS ADJUSTMENT CLAUSE:

> A.     Subject in all other respects to the provisions of the Mortgage Clause of this policy; loss, if any, shall be adjusted with the Insured, but shall be payable to the insurance trustee designated by the appropriate governing body of the Association.

> B.     Such payment to the insurance trustee shall constitute a complete discharge of this Company's liability under this policy for such loss.

The Causes of Loss, Special Form, CP 1030, provides as follows:

      A.     Covered Cause of Loss

> "[C]overed Causes of Loss means RISKS OF DIRECT PHYSICAL LOSS unless the loss is:

> 1.     Excluded in Section B., Exclusions; or

August 16. 2002
Page 9

> 2.    Limited in Section **C.**, Limitations;

that follow."

**B.    EXCLUSIONS**

> 1.    We will not pay for loss or damage caused directly or indirectly by any of the following.  Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.
>
> . . .
>
> g.    Water
>
> > (3)    Water that backs up or overflows from a sewer, drain or sump....
>
> 2.    We will not pay for loss or damage caused by or resulting from any of the following:
>
> . . .
>
> b.    Delay, loss of use, or loss of market.
>
> . . .
>
> d.    (1)    Wear and tear;
>
> > (2)    Rust, corrosion, fungus, decay deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself;
>
> . . .
>
> > (4)    Settling, cracking, shrinking or expansion;
>
> . . .

· August 16, 2002
Page 10

    (6)    Mechanical breakdown, including rupture or bursting caused by centrifugal force.

    . . .

    (7)    The following causes of loss to personal property:

        (a)    Dampness or dryness of atmosphere;

        (b)    Changes in or extremes of temperature....

But if an <u>excluded cause of loss</u> that is listed in **2.d.(1)** through **(7)** <u>results in a "specified cause of loss"</u>..., <u>we will pay</u> for the loss or damage caused by that "<u>specified cause of loss</u>".... (emphasis added)

    . . .

f.    Continuous or repeated seepage or leakage of water that occurs over a period of 14 days or more.

    . . .

3.    We will not pay for loss or damage caused or resulting from any of the following. **3.a.** through **3.c.** But if an excluded cause of loss that is listed in **3.a.** through **3.c.** results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

a.    Weather conditions.  But this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in Paragraph 1. above to produce the loss or damage.

b.    Acts or decisions, including the failure to act or decide, ...of any person (or) group....

August 16, 2002
Page 11

    c.    Faulty, inadequate or defective:

. . .

    (2)    Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction

    (4)    Maintenance;

of part or all of any property on or off the described premises.

## C.    LIMITATIONS

The following limitations apply to all policy forms...

We will not pay for loss of or damage to property, as described and limited in this section.

    c.    The interior of any building or structure, or to personal property in the building or structure, caused by or resulting from rain...whether driven by wind or not, unless:

    (1)    The building or structure first sustains damage by a Covered Cause of Loss to its roof or walls through which the rain...enters....

    5.    We will not pay the cost to repair any defect to a system or appliance from which water...escapes.

. . .

## E.    ADDITIONAL COVERAGE EXTENSIONS

    2.    **Water Damage**...If loss or damage caused by or resulting from covered water...damage loss occurs, we will also pay the cost to tear out and replace any part of the building or structure to repair damage to the system or appliance from which the water or other substance escapes.

· August 16, 2002
Page 12

**F.    DEFINITIONS**

"Specified Causes of Loss" means the following:    Fire; lightning;...windstorm...water damage.

3.    Water damage means accidental discharge or leakage of water or steam as the direct result of the breaking apart or cracking of any part of a system or appliance (other than a sump system including its related equipment and parts) containing water or steam..

**III    APPLICATION OF THE POLICY; REASONS FOR RESERVATION OF RIGHTS**

Fulcrum reserves its right to deny any payment under the Policy for this loss. The Policy was issued subject to specified restrictions on the cause of loss, the type of loss, and the property covered by the Policy. The Policy does not cover loss or damage due to fungus unless the fungus causes a specified cause of loss nor does it cover any damages that were the result of leakage of water for a period of over fourteen (14) days. There is no coverage under the Policy for rainwater intrusion unless the intrusion is the result of Covered Cause of Loss to the roof or walls, and there is no coverage regardless of source if the damage is the result of defective construction, design, workmanship, repair or maintenance. We understand that some unit owners have threatened suit against the architect and the general contractor because of deficiencies that existed in the building as of the date their units were sold, and multiple water intrusions from either the outside atmosphere, rainwater or other sources has occurred. Any coverage for wind driven rain, if entry is due to a Covered Cause of Loss, is subject to a deductible or $2,500 per unit per occurrence. The deductible for other non-specified perils is $5,000 per occurrence. The Policy excludes any physical loss or damage that is the result of the release of toxic or hazardous substances, contaminants or pollutants. In addition, in the event Fulcrum has been prejudiced by delay in reporting the loss, Fulcrum may be entitled to deny coverage or reduce its payment to the extent of such prejudice. At this time, there is insufficient information of the claim(s) and damages asserted to allow Fulcrum to determine whether these, or potentially other provisions of the Policy may limit or reduce the coverage available to the Association.

Fulcrum respectfully reserves their right to assert additional grounds for denial and/or limitation of coverage as they may have or acquire in the future under the Policy. This reservation extends to all rights and defenses even if they have not been specifically referenced in this letter. Please understand that any action by Fulcrum, and/or any of their agents, employees, attorneys or adjusters respecting the investigation of this matter were and are undertaken without prejudice to Fulcrum's right to assert any appropriate conditions, provisions, limitations, or exclusions of the Policy as a defense to coverage. No actions by Fulcrum, and/or any of their agents, employees, attorneys or adjusters shall constitute a waiver or estoppel of their right to refuse to indemnify the

August 16, 2002
Page 13

Association in respect of the loss. Fulcrum also reserves the right to institute a declaratory judgment action against the Association to determine the extent of its obligations under the Policy if those obligations are controverted by the Association.

Please study the provisions of the Policy carefully. If you do not have a copy of the Policy, we will gladly provide one to you without charge. Fulcrum will notify you of the additional information necessary so that it can understand the exact nature of the claim being asserted by the Association and provide the necessary forms and information so that the Association may properly submit a claim. If you have any questions, comments or objections concerning Fulcrum's position as outlined in this letter, please contact the undersigned at your convenience. Further, if you have any information or documents which you believe may be relevant to the issue of coverage under the Policy, please forward that information as soon as possible. Fulcrum will promptly evaluate any such information and may reconsider its position as appropriate.

Very truly yours,

Ken E. Kendrick

KEK/clm